### IN THE

## SUPREME COURT

### OF THE

## STATE OF LOUISIANA.

———⟶ ✳ ⟵———

EASTERN DISTRICT, MAY TERM, 1829.

——⟶⟐⟐⟐⟵——

### *DEPAU* vs. *HUMPHREYS.*

APPEAL from the court of probates of the parish and city of New-Orleans.

MARTIN, J. delivered the opinion of the court. The defendant, administrator of the estate of W. Kenner, deceased, sued on sundry notes of the firm of W. Kenner & Co. (composed of the deceased, Clague and Oldham) given in the city of New-York to the plaintiff, pleaded the statute of usury of the state of New York. On this, the plaintiff, with the defendant's consent, filed a supplemental petition, in which he prayed that, if the plea of usury was sustained, he might have judgment for the balance due him

*The rate of interest to be paid from the date of a note may be legally stipulated, according to the law of the place where the note is made, altho' it be payable in another, where the stipulation of a lesser rate is alone legal.*

VOL. VIII, (N. S.) 1

by the firm, before the notes mentioned in the original petition were given. To this supplemental petition the plea of usury was repeated.

The defendant had judgment, and the plaintiff appealed.

In this court, the appellant's pretensions have been confined to the amount claimed in the supplemental petition, and his counsel has relied on the cases of *Gray* vs. *Taylor*, 1 *Hen. Blackstone,* 462, and *Gayther* vs. *the Bank of Georgetown,* 1 *Peters* 43, to shew that, admitting the notes in the original petition are avoided by the statute, they present no obstacle to his recovery of the preceding debt. The appellee's counsel has not urged any authority or reason to destroy or weaken the weight of these cases.

To establish the amount due by the firm to the appellant, at the time their notes were given, his counsel has produced an account current subscribed by the firm, in the city of New-York; by which they recognise themselves debtors of a balance of $14,154 93 on the 31st of July, 1823, and afterwards debit themselves for $15,000, the amount of a note of Clague & Oldham, endorsed by the firm, gi-

ven in New-Orleans, payable in New-York,
bearing interest at ten per cent. from the date,
that rate being the highest one of conventional
interest, according to the law of Louisiana;
the note being given in New-Orleans. The
firm debit themselves further for the sum of
$500, for four months' interest then due on
the note. These three items form the sum of
$29,654 98. The firm is next credited for a
sum of $1313 34, and a balance is strnck as
due from them of $28,349 59, to which $459 71
were added as due for interest, and the final
balance is stated at $28,801 30 due on the
first of August, 1823.

On this the appellee shews that, on the ninth
of the same month, the appellant received, in
New-York, five notes of the firm for the ag-
gregate sum of $29,654 98, payable at one,
two, three, four and five years; and it being
the intention of the parties that he should re-
ceive interest at the rate of ten per cent. ac-
cording to the law of Louisiana, but in viola-
tion of that of New-York, which does not al-
low a higher rate than seven per cent., the
notes were made payable at the latter rate,
and a sixth was given, payable in three years,

Eastern Dist.
*May*, 1829.

Depau
*vs.*
Humphreys

for the difference of three per cent. between the two rates. The counsel, afterwards producing the statute of usury of the state of New-York, which avoids all contracts, in which a higher rate of interest than seven per cent. is stipulated, has concluded that these six notes were tainted with usury, according to the laws of the place, in which they were made.

The opposite counsel has not, in this court, made any attempt to controvert this proposition.

The appellee's counsel has not contested the appellant's right to the original balance of $14594 93, stated to be due on the 31st of July, 1823, but has insisted on a credit of $11,851 93, the amount of two of the notes mentioned in the original petition, which were paid at maturity, reducing the balance due the appellants to $2292 66.

As to Clague & Oldham's note for $15000, it has been urged that the firm was bound as endorsers only; that the diligences, from which their liability would have resulted, were neglected; that it has been cancelled: that no obligation resulted from their debiting themselves with the amount of the note, and interest due

thereon on the first of August, 1823, on the
account then stated, in the city of New-York,
because that settlement was made to carry in-
to effect a corrupt bargain, imposed on them
by the appellant, and to which their necessi-
ties compelled them to submit, in order to ob-
tain some delay: that the note is in itself usu-
rious, inasmuch as it states on its face a rate
of interest proscribed in the state in which
payment was to be made.

We think the settlement, in which the ba-
lance due by the firm to the appellant was
stated on the first of August, 1823, has not
been proven to be tainted with usury (unless
Clague & Oldham's note was so). Nothing
shews that the contract for further time, ac-
cording to which the notes stated in the ori-
ginal petition were given, eight days after, was
in contemplation. At the time of this settle-
ment, the note was not yet payable; it cannot
be imputed to the appellant that he neglected
the diligences which charge an endorser.—
The firm might very fairly with their consent
be charged with the amount of a note of two
of its members, endorsed by the firm, and on
their assuming to pay its amount as principals,

and crediting the appellant with capital and interest, the surrender of the paper would not affect the liability of the firm.

So that the decision of this case must turn on the legality of the rate of interest stipulated for, on the face of the note of Clague & Oldham.

The appellant's counsel urges that the rate of interest may be stipulated, according to the law of the place in which the money is lent, and a note taken for its reimbursement, altho' such a note be payable elsewhere.

In support of this position, he has invoked many authorities, and principally the case of *Van Reimsdich* vs. *Kane & al.* 1 *Gallison* 375. In which, Judge Story, delivering the opinion of the court, said: "This rule is well settled, that the law of the place where a contract is made is to govern, *as to the nature, validity* and *construction* of such contract; and that, being valid in such a place, it is to be considered equally valid and to be enforced every where, with the exception of cases, in which the contract is immoral or unjust, or in which the enforcing of it in a state would be injurious to the rights and the interests, or

the convenience of such state or its citizens.

This doctrine is explicitly averred in *Huberus de conflictu legum*, and has become incorporated into the code of national law in all civilized countries. It would seem to follow from this doctrine, that, if a contract be void, by the law of the place where it is made, it is void every where, and that the discharge of a contract in the place where it is made shall be of equal avail in every other place. *To this last proposition*, there is an exception, when the contract is to be executed in a place different from that in which it is made, for the law of the place of execution will then apply."

The counsel contends that, as to the first proposition, the applicability of the law of the place where the contract is made to the nature, validity and construction of the contract, the judge speaks absolutely, and states no exception—and the exception he afterwards states is confined to the case of the *discharge* of the party, which is to be tested by the law of the country in which the performance was to take place.

1. The appellee's counsel has first drawn our attention to the passage of *Huberus*, refer-

red to by Judge Story, a translation of which is to be found in **3** *Dallas,* **361.**

*Huberus,* after stating that a contract, valid according to the law of the place where it is made is valid every where else, adds: *Verum tamen, non ita* precise *respiciendus est locus in quo contractus est initus, ut si partes alium in contrahendo, locum respexerint, ille non* potius considerandus *nam contraxisse unusquisque, in eo loco intelligitur, in quo ut solveret, se obligavit. ff.* 44, 7, 21.

Hence, the counsel thinks that by comparing the opinion of Judge Story with the part of *Huberus,* on which it is grounded, it follows that, as the note under consideration, was made payable in New-York, its validity and construction must be governed by the laws of that place.

2. He relies next on another law of the digest, 42, 4, 3. *Aut ubi quisque contraxerit: Contractum autem non utique in eo loco intelligitur quo negotium gestum sit, sed quo solvenda est pecunia.*

*Pothier's* contrat de change is next introduced, in which it is said that the protest of a bill of exchange is to be made according to

the law of the place in which the bill is pay-
able. *Merlin, Questions de droit, verbo*
*Protest,* are quoted to shew the same princi-
ple, and that all the obligations, resulting from
a bill of exchange, are governed by the law of
the place at which it is payable.

4. The counsel then resumes the *corpus juris civilis,* to shew that, a question arising as to the price of wine, which the defendant had failed to deliver, it was decided that if there was a place of delivery stated, the price there was to be given, otherwise that of the place in which the suit was brought. *Interrogavi, cujus loci pretium sequi opporteat, respondit, si convenisset in certo loco redderetur, quanti eo loco esset; si dictum non esset, quanti ubi esset petitum. ff.* 9, 1, 3. § 4

5. The following note of *Gregorio Lopez on Partida,* 3, 2, 32, is produced: *Quando contractus celebratur in uno loco, puta in Hispali et destinatur solutio in Cordubæ; tunc non inspicitur locus contractus, sed locus destinatæ solutionis, ut habetur in ista lege et l. contraxisse.*

6. *Voet's* authority, which is next brought under consideration, appears better to support

the position of the appellee's counsel than any other. *Si alio in loco, graviarum usurarum stipulatio permissa, in alio vetita sit, lex loci in quo contractus, celebratur spectanda videtur, an moderatæ, an vero modum excedentes usuræ per conventionem constitutæ sint. Dummodo meminerimus illum propie locum contractus, in jure non intelligi, in quo negotium gestum est, sed in quo pecuniam ut solveret se quis obligavit. Ad Pandect. 22 de usuris et fructibus.* ς. 6.

7. The British and American cases, cited by the appellee's counsel are *Robinson vs Bland,* 2 *Burrows* 1077, 17 *Johnson* 519, 20 *id.* 102, 2 *Johnson's cases* 355, *Whiston & al.* vs. *Stodder & al.* 8 *Martin* 952, *Vidal* vs *Johnson,* 11 *id.* 23.

The proposition, which the appellee's counsel has laboured to establish, is that a contract (as to its nature, validity, effect and the manner in which it is to be performed, or the obligations of it are to be dissolved) is *exclusively* to be governed by the law of the country, in which the performance was to take place: i. e. that there is but one *locus contractus.*

The appellant's counsel urges that there are
two *loci contractus;* that in which the con-
tract took place, and that in which the per-
formance was intended.  *Locus ubi con-*
*tractus celebratus est*; *locus destinatæ solu-*
*tionis.*

Keeping this distinction in view, let us exa-
mine the authorities, by which the first propo-
sition is attempted to be supported.

1. *Huberus* says, we are not so *precisely* to
consider the place, in which the contract was
begun; that if the parties had in contracting
another place in view, the latter should not
more virtually *potius* to be attended to.   In
the translation in Dallas' reports, *precise* is
translated by *exclusively.*   Hence the impres-
sion that our minds have received is, that the
law of the place, in which the contract is en-
tered into, may have some influence on it, even
when the performance of it was to take place
in another country.

This leads us to the examination of the
laws *contraxisse* and *aut ubi quisque.* They
are etxremely short.

The first says: *Contraxisse unusquisque*
*in eo loco intelligitur, in quo ut solveret se*

*obligavit.*    Every one is understood (pre-
umed) to have contracted, in that place where
he bound himself to pay.

*Godefroy*, the annotator of the *corpus juris
civilis*, appears to have considered this law as
a mere rule of evidence; for he gives us the
reason of it in the margin. *Quia ubi non ap-
paret quod actum est, loci consuetudo atten-
ditur.* He seems to think that, when the par-
ties clearly express their meaning, the law is
inoperative—that when the lender stipulates
for a legal rate of conventional interest, and
the borrower agrees to pay it, there is no ne-
cessity, in endeavoring to discover their inten-
tion, by examining what is customary at the
place in which the contract is to be perform-
ed. This conclusion is strengthened by the
reference he makes to another law of the di-
gest. *Si numerus nummorum, legatus sit,
neque appareat quales legati sint, ante om-
nia ipsius patrisfamilias consuetudo, deinde
regionis in qua versatur, inquirenda est. ff
30, 1, 50.* From this last law *Godefroy* refers
his readers to the laws *Interrogavi* and
*item non apportet* which the appellee's coun-
sel has cited.

**II.** The second law relied on; *Aut ubi*
*quisque*, which is the third of the fifth title of
forty-second book of the digest, cannot be
understood, without considering the two pre-
ceding.

The first says: *Venire bona ibi opportet*
*ubi quisque defendi debet, id est.* One is
bound to suffer the sale of his goods, under an
execution, at the place in which he is bound
to defend himself, that is to say:

Law **2.** *Ubi domicilium habet*; where he
has his domicil.

Law **3.** *Aut ubique quis contraxerit. Con-*
*tractum autem non utique eo loco intelligi-*
*tur, quo negotium gestum sit, sed quo solven-*
*da est pecunia.* Or where he contracted. For,
the contract is not understood to be where the
business is done, but where the money is to be
paid.

All that this law teaches us is, that at Rome
the defendant was suable at his domicil, and
at the place where he bound himself to pay.

**III.** *Pothier & Merlin* have often shed on
matters, discussed in this court, a light which
we would have sought in vain in British and
American writers. But, in the present case, a

resort to the parts of their works, to which the appellee's counsel has drawn our attention, would rather embarass, than aid our enquiry. As protests are generally made at the place in whic the bill of exchange is payable, and instruments must be in the forms prescribed by law, of the place in which they are made, it follows that the protest must generally be made according to the law of the place in which the bill is payable. But, a bill may be drawn on London, payable in Paris or Amsterdam—the protest for non-acceptance must then be made in London, and the form of it be according to the law of England—the protest for non-payment must be made in Paris, and consequently be regulated by the law of France. We must dismiss those French authorities, with the observation, that, in these states, the principle, that all the obligations resulting from a bill of exchange, are governed by the laws of the place, at which it is payable, is inadmissible. The validity, and to some purpose, the construction of the contract of the drawer, and of each endorser, must be governed by the law of the place of drawing, and indorsing; but, as each of these in effect undertakes that

ne drawee shall accept and pay the bill, according to its tenor in ascertaining the obligations of the drawer and several indorsers recourse is necessarily had to the law of the place in which the bill is payable, to discover whether the holder has exercised due diligence, and what will be a fulfilment on the part of the drawee of the undertaking of the drawer and indorser, in respect to the acts to be done by him: if it appears that the undertakings of the drawer and endorser have not been fulfilled by the drawee, a resort must he had to the laws of the places of drawing and indorsing to determine what notice the holder must give, of the dishonor of the bill, and the amount of the damages to be paid by the drawer and several indorsers. In the case of a bill drawn in New-Orleans on Philadelphia, the Supreme Court of New-York, in *Hicks* vs. *Brown*, 12 *Johnson*, 143, said "the drawer became conditionally liable for the payment, and the condition was his receiving due notice of the dishonor of the bill, and this notice was to be given in New-Orleans; the circumstance of the bill being drawn upon a person in another state, makes no difference."

Alike decision took place in Pennsylvania, in the case of a bill drawn in South Carolina *Hazzlehurst* vs. *Kean*, 4 *Yates* 19.

In *Slocum* vs. *Pomroy* the Supreme Court of the United States, held that the endorser was liable to damages, according to the law of Virginia, having endorsed the bill in Alexandria. Chief Justice Marshall, who delivered the opinion of the court, said: "although the drawer was not liable to the damages of Virginia, the endorser is. An endorsement is not simply the transfer of the paper; but a new and substantial contract." 6 *Cranch* 221.

These decisions support the proposition of the appellee's counsel much more strongly, than the principle he invokes from Merlin; because they shew that the drawer and endorsers are bound according to the law of the place where they bound themselves respectively to pay—their undertaking is not to pay at the place where the bill is payable, but at the place in which they contract, provided due diligence be exercised on the dishonor of the bill: and a decision, that they are bound according to the law of the place in which the bill is payable, would violate the principle

invoked, by the law *contraxisse,* under

which the party is bound according to the law of the place, *ubi ut solveret se obligavit.*

IV. The laws *interrogavi* and *item non opportet,* have been stated at full length and require no observation.

V. The Partida, 3, 2, 32, to which Gregorio Lopez has annexed the note cited by the appellee's counsel, treats of the jurisdiction of courts, *ante quien deve el demandador hacer su demanda para responder el demandado*; and Gregorio concludes that the judge of the place, in which the defendant bound himself to pay, has jurisdiction, and not the one of the place in which the contract was made.

VI. The passage, cited from Voet, will be examined at the close of the opinion.

We are now to attend to the British and American authorities. The first is the case of Robinson vs. Bland, 2 *Burrows,* 1077.

This was an action on a bill of exchange, drawn in France on London, for money lost at a gaming table—there were other counts. Lord Mansfield premised his opinion, by the observation that the facts scarce left room for any question; the laws of France and Eng-

land being the same. He then stated that there were three reasons, why the plaintiff should not recover, on the bill.

The first was that the parties had a view to the law of England. The law of the place can never be the rule, where the transaction is entered, with an express view to the laws of another country, as to the rule by which it is governed. He referred to *Huberus and Voet.* In every disposition in contracts, where the subject matter relates locally to England, the law of England must govern and be intended to govern.

Mr. Justice Denison thought that, as the plaintiff had appealed to the laws of England, his case was to be determined by them.

Mr. Justice Wilmot said the case came out to be no case at all; no point at all; no law at all.

Finally, the plaintiff recovered on a money count.

As the court was not called upon to determine, whether a contract valid at the place in which it was entered into, but otherwise at the place of payment, was void; we think that what fell from Lord Mansfield must be con-

sidered as an *obiter dictum*, on a question he was not called upon to solve.

It is true, this dictum fully supports the appellee's counsel's proposition, and comes from one of the most able judges that ever sat in a British court, and as such is entitled to much respect, but to no greater weight, than it will have, after a consideration of the authorities on which it rests.

The case in **17 *Johnson*, 519,** is a statement of the opinion of the court of Chancery of England, which decided that a bond executed in England and made payable in Ireland, carried Irish interest *where none was stipulated. Pre. Ch.* 128.

This case appears to support *Huberus'* opinion, that the *lex loci solutionis* is to be referred to, when the parties have not expressed their intentions. *Cum non apparet quid actum est,* and the distinction, that will be taken by-and-by, places the interest *ex mora* under the control of the law *contraxisse.*

In the case of *Van Schaick* vs. *Edwards,* 2 *Johnson's* cases 255, a resident of Massachusetts, owning lands in New-York, entered into a contract, in the former state, with an inhabi-

tant of the latter, for the sale of the lands on a credit, and took a bond, with a rate of interest exceeding that of Massachusetts, but less than that of New-York, and gave his own bond for a conveyance, on receipt of the money; the suit was on the vendor's bond, and on the question whether the bond was usurious, and whether the laws of Massachusetts were to govern, the court was divided. So, the case throws no light upon the question under consideration.

Two decisions of this court have lastly been invoked: that in *Whiston & al.* vs. *Stodder & al. syndics*, 8 *Martin* 95, and that in *Vidal* vs. *Thompson*, 11 *Id.* 23.

In the first, we held that on a sale completed in England, where the vendor has no privilege on the thing sold, he acquires none on its being brought here; and we cited *Cassaregis disc.* 179, where it is holden, that contracts are made in the country, and subject to its laws, where the final assent may have been given, viz: that of a merchant who receives and executes the order of his correspondent.

In the case of *Vidal* vs. *Thompson* and that of *Morris* vs *Eves*, 11 *Martin*, we recognized

principles which, if correct, must determine
this case in favor of the appellant, viz:

1. An instrument, as to its form and the formalities, attending its execution, must be subject to the laws of the place were it is made, but

2. The law and usages of the place where the obligation, of which it is evidence, is to be fulfilled, must regulate the performance.

3. In *Morris* vs. *Eves*, we held that a contract, made in a foreign country, is governed by its laws, in every thing which relates to the mode of construing it, the meaning to be attached to the expressions by which the parties may have engaged themselves and the nature and validity of the engagement.

If these principles be correct, there must be two *loci contractus*, to be considered in law, in a contract which is to be performed in a different place than that in which it is entered into; *locus celebrati contractus—locus solutionis;* in many an instrument more than two places as *loci centractus* are to be considered. The holder of a protested bill of exchange has his remedy against the acceptor, according to the laws of the place on which the bill

is drawn; against the drawer according to the law of the place in which the bill was drawn; and when there are several endorsers, he may have his remedy against each of them, according to the law of the place where he endorsed. Reason points out that, in every act, the place in which it is to take place, is to be considered in ascertaining its validity and effect.

*Locus contractus dicitur duobus modis: primo ubi contractus, seu conventio vel obligatio perficitur; secundo, ubi solutio vel deliberatio destinatur. Pres. Everard, cons.* 78. §. 17. §. 18.

The distinction, as to the parts of a contract which are to be governed by the law of the place in which it was entered into, and those which are to be governed by the laws of the place in which the payment was intended, is well marked.

In the first class, is first included whatever relates to the form and perfection of the contract, and all the ceremonies and formalities attending it.

*In scriptura instrumenti, in ceremoniis et solemnitatibus, et generaliter in omnibus quæ ad formam et perfectionem con-*

*tractus pertinent, spectanda est consue-
tudo regionis ubi fit negotium.    Debet enim
servari statutum loci contractus, quoad haec
quæ oriuntur secundum naturam ipsius
contractus.    Alex. cons. 37.* It is incontro-
vertible that in this passage *Alexander* speaks
of the *locus contractus,* as the place *ubi fit
negotium.*

*Generaliter, in omnibus quæ ad formam
contractus, ejusque perfectionem pertinent,
spectanda est consuetudo regionis ubi fit
negotiatio; quia consuetudo influit in con-
tractus et videtur ad eos respicere et volunta-
tem suam eis commodare. Christineus. Mo-
do sic est.    Quoad perfectionem contractus
seu solemnitatem adesse, seu substantiam
ejus requisitam, semper inspicitur statutum
seu consuetudo loci celebrati contractus.
Pres. Everard, cons. 78.* As this writer says
that the law *loci celebrati contractus* is always
attended to, we must understand him as repel-
ling the idea, that there is any exception, as to
cases in which the payment is to be made at a
different place, than that in which the contract
is entered into. The *locus celebrati contractus*
is here clearly put into contra-distinction with
the *locus solutionis.*

In the same class, are next to be placed all matters resulting from the *nature* of the contract, or immediately therefrom.

*Inspicimus locum contractus, in his quæ veniunt ex natura contractus. Bartolus ad l. 1 ff. de usuris.*

*In concernentibus contractum et emergentibus tempore contractus*, says *Dumoulin, spectatur locus in quo contrahitur.*

*Si lis oritur ex natura et tempore contractus, consideratur statutum loci. Srick. de jure in alieno territorio exercente.*

*Aut quæris de his quæ oriuntur secundum formam ipsius contractus—aut de his quæ oriuntur expost facto, proper negligentiam vel moram; primo casu inspicitur locus contractus et intelligo locus contractus, ubi celebratur, non ubi collata est solutio. Bartolus, ad l. cunctos populos, Code de sum. Tr. no. 15 & 16.* Here Bartolus emphatically calls the *locus celebrati contractus,* the *locus contractus* in contra-distinction of the *locus destinatæ solutionis.*

As to what concerns the performance of the obligation—the payment of the sum, or the delivery of the thing, which is the object of

the contract, the presentation for acceptance and payment of a bill of exchange; the acceptance, days of grace, protest, weight, measures, damages arising from negligence or delay—the *locus destinatæ solutionis* is to be considered.

*Sed ubi agitur de consuetudine solvendi, vel de his quæ veniunt implendi, diu post contractum et in alieno loco impletioni destinato, tunc inspicitur locus destinatæ solutionis, Everard, cons.* 78. It is in this particular that the law *contraxisse* is particularly and exclusively applicable; because to use its expressions, every one is understood to have contracted in that place, (viz: with a view to that place,) in which he bound himself to pay. *Contraxisse unus quisque in eo loco, intelligitur, ubi ut solveret se obligavit;* there, according to the second law invoked by the appellee's counsel, he is suable, because it is the place *ubi contraxisse,* and as to him *contractum autem non utique eo loco intelligitur quo negotium gestum sit, sed quo solvenda est pecunia.* But as to the party, with whom he who binds himself to pay money, as to the obligation of the vendor, who has stip-

Eastern Dist
*May*, 1829.

Depau
*vs.*
Humphreys

ulated for payment in a place different from that in which the sale takes place and the thing is to be delivered, the contract as to the period at which the property of the thing sold, passes to the vendee; the mode of delivery, the obligations of warranty, the manner of his being put *in mora*, the liability to the redhibitory action, or that *quanti minoris*, the law of the place, in which the vendee bound himself to pay, affords no legitimate rule of decision; for the vendor did not bind himself to perform any act there, that is not the place *ubi ut solveret se obligavit.* As to him, that place is the one in which he bound himself to deliver the thing sold and to warrant it: and we are to resort to the law of this last place, to ascertain whether his, the vendor's, obligations were duly performed, and to assess the damages due to the vendee, if they were not; because, as to the vendor, that place is, in the language of Everard, *locus ubi deliberatio destinatur.*

Certainly, in a bilateral a synallagmatic contract, where the obligations of the parties are to be performed in different places, in which different laws and usages prevail, the laws and usages of neither can offer a legiti-

mate rule of decision, for all the obligations of the contract. Each party must perform his according to the law of the place, *ubi ut solveret se obligavit*—and in case he fail, he must yield to his adversary, damages equal in value to that of the thing he bound himself to deliver, at the place *ubi solutio* or *deliberatio destinatur*.

In obligations to pay money, the measure of damages is interest, according to the legal rate. The Roman law considers interest, rather as damages to be allowed for the delay of payment, than as a profit contemplated at the time of the contract. *Usuræ non propter lucrum petentium; sed propter moram solventium, infliguntur ff.* 22, 1, 17 & 3. As such they are regulated by the law of the *locus destinatæ solutionis.*

But, in a loan of money, nothing is more common, in countries where the parties are not restrained by law to one rate of interest, to stipulate a particular one, (by their convention,) within the scope which the law allows, and this interest is called conventional by contradistinction from the legal interest *ex mora.*

In such a case, as the object of the conven-

tional interest is to afford to the lender a compensation for the profit he foregoes, in yielding the use of his money to the borrower, it should seem, that the circumstance, of the place of payment differing from that in which the lender parts with his money, ought to have no influence, in the fixation of the rate of interest.

Accordingly we find it laid down that *usurarum modus constituendus est, in regione in qua contrahitur; et cum, redditus duodenarius, in Gallia stipulatus, in controversia incidisset, patrocinante me justicatum est in curia Flandriæ, valere pactum, nec obesse quod in Flandria, ubi redditus constitutus licet hypotecæ impositus proponeretur, usuras semisse graviores stipulari non liceat. Sed hoc intellige de usuris in stipulationem deductis, sed non de iis quæ ex mora debentur; in quibus ad locum solutionis respicere opportet. Burgundus, Tract. n. 4, and alfo n. 27, 28 & 29.*

*Quand il s'agit de decider, si des conventions faites du sujet des droits qui naissent ex natura et tempore contractus, sont legitimes ou non, il faut suivre la loi du lieu ou se passe le contrat. Boullinois, Ob. 46. p 472*

*Si s'agit de determiner la legitimite du taux des rentes, et que dans le lieu de la passation du contrat, le taux soit different de celui qui se paye dans le lieu du domicile du debiteur, ou dans celui du creancier; soit encore dans les lieux ou les biens hypotheques sont situes; le taux sera jugé tres légitime, s'il est conforme a la loi du lieu ou le contrat se passe. Id. 472.*

Let it be noticed, that although Boullinois states a case, in which no place is stipulated, for nominatim, he states it, in such a manner, as to include every place of payment which the law recognises, where none is actually mentioned; for then, he informs us, the law requires payment at the domicil of one of the parties, or on the premises. If there be no day of payment stated, the creditor may expect payment, at his domicil, otherwise he must seek it at that of the debtor, on whom a demand is to be made.

Bartolus and Boullinois consider, in the above cases, the interest paid for money in the contract of *constitution de rente*, or annuity. The rente or annuity, *redditus* cannot exceed the legal rate of interest, and they both teach

that this rate must be according to the *lex loci celebrati contractus,* in opposition to the *lex loci solutionis.*

The principle that a contract, valid in the *locus celebrati contractus,* is void, if contrary to the law *loci solutionis,* must establish the converse of the proposition, i. e. that a contract void, according to the former, is valid, if it be so according to the latter.

If this be the case, of what use is it for any legislature to pass a law for the protection of the weak and necessitous?

In some countries, the age of majority is fixed at twenty-five, in others at one and twenty. The minor, who cannot bind himself at home, may do so, if he engages to pay in another country.

Elsewhere, as till very lately here, contracts of suretyship are interdicted to females—they may be deprived of the protection of the laws of their country, if they be prevailed on to engage to pay in another.

A note made at Natchez, which would be null and void, as tainted with usury, according to the laws of the state of Mississippi, if payable there or at Monticéllo, at the distance of several hundred miles, would be perfectly

valid, if made payable at Vidalia, across the river.

Courts of justice must take care that the law be not evaded. In the case of *Stapleton* vs. *Conway*, 1 *Vesey*, 428, 3 *Atkins*, 727, Lord Hardwicke held that, if a contract was made in England, for the mortgage of a plantation in the West Indies, and there be a covenant in the mortgage for the payment of eight per cent. interest, it would be a method to evade the statute of usury, and such a contract would be as much against the statute as any other contract.

The case of *Dewar* vs. *Span*, 3 *Term Reports*, 425, is to the same effect. A bond was given in England, upon the purchase of an estate in the West Indies, with the reservation of interest at six per cent, and notwithstanding it was contended, in argument, that, although the bond was executed in England, it arose on a contract for the purchase of an estate in the West Indies, yet the court unanimously held the bond to be usurious, as if the attempt could succeed, it would sap the foundation of the statute of usury.

In the same manner, if parties could free

themselves from the effect of the laws of their country, by stipulating for payment elsewhere, they would sap the foundation of every law enacted for the weak and necessitous.

The authority of the passage from Voet remains to be examined. This author says: *Si alio in loco graviarum usurarum stipulatio permissa, in alio vetita sit, lex loci ubi contractus celebratus est spectanda videtur, an moderatæ, an vero modum excedentes usuræ, per conventionem stipulatæ sint.*

If in a place, the stipulation of higher interest be permitted, in another forbidden, the law of the place, in which the contract was celebrated, is to be resorted to, in order to ascertain whether the lesser or the greater rate of interest be stipulated by the contract.

Thus far Voet teaches what we have seen Alexander, Bartolus, Burgundus, Everard, Strickius and Boullinois teach, and the contrary of which no other commentator positively asserts, what, in our opinion, every sound principle of law dictates.

But the appellant's counsel urges that Voet, unsays, in the succeeding paragraph, what he appears to have so emphatically expressed.

The words of the second paragraph are *Dummodo meminerimus illum proprie locum contractus, in jure non intelligi, in quo negotium gestum est, sed in quo ut pecuniam solveret se obligavit.*

In the argument, which the appellee's counsel draws, in this respect, he is fully supported, by what is said *arguendo* by Lord Mansfield, in *Robinson* vs. *Bland*, and in some degree, by Judge Kent, in the same manner, in the case of *Van Shaick* vs. *Edwards*, already cited. In endeavouring to ascertain the character of the rate of interest, stipulated in a note given in Massachusetts, Judge Kent says: "had the money, for instance, in this case, been made payable at Albany, or elsewhere in this state, (New-York) then *perhaps* the decision in *Robinson* vs. *Bland*, would have applied."

If, in the second paragraph, Voet meant to introduce an exception, to the rule laid down in the first; if he meant to teach that the legality of a rate of conventional interest, arising not *ex mora* but *tempore contractus* is *exclusively* to be tested by the law *loci solutionis*, even when it is different from the law

*loci celebrati contractus:* then, we cannot consider him as affording to us a legitimate rule of decision in the present case, because the weight of his authority is borne down by that of a crowd of the most respectable commentators of the law he cites.

Perhaps, he must be understood, in the second paragraph, to convey to the student a warning, that, by what he teaches in the first, he must not be understood to impugn the proposition, that, in a great degree, the law *loci solutionis*, influences the obligation of the party, who bound himself *ut solveret pecuniam.*

Upon the whole, we must conclude, as we did in *Norris* vs. *Eves* and *Vidal* vs. *Thompson*, that contracts are governed by the law of the country in which they were made, in every thing which relates to the mode of construing them, the meaning to be attached to the expressions by which the parties bound themselves, and the nature and validity of the engagement.

But that, wherever the obligation be contracted, the performance must be according to the law of the place, where it is to take place.

In other words, that in a note executed here, on a loan of money made here, the creditor may stipulate for the legal rate of conventional interest authorised by our law, although such a rate be disallowed in the place, at which payment is to be made.

Consequently, the judge of probates erred in considering Clague & Oldham's note as usurious.

It is therefore ordered, adjudged and decreed, that the judgment of the court of probates be annulled, avoided and reversed; and this court proceeding to give such a judgment as in their opinion ought to have been given in the lower court, it is ordered, adjudged and decreed, that the plaintiff be recognised and admitted as a creditor of W. Kenner, deceased, for the sum of seventeen thousand seven hundred and ninety-two dollars, ninety-seven cents, and the sum of four thousand seven hundred and eight dollars for interest up to this day, together with interest at ten per cent. on five thousand six hundred and ninety-seven dollars, the balance due on the note, from this date, until paid; and on the balance of the judgment, viz: twelve thousand and ninety-

five dollars ninety-seven cents, at five per cent. till paid, and costs in both courts.

*Livermore* for the plaintiff—*Mazureau & Hennen* for the defendants.